United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CESAR LEONOR,

Plaintiff,

v.

CALIFORNIA HIGHWAY PATROL OFFICERS T. KOZISEK, I HERNANDEZ, and M. NEGRETE,

Defendants.

Case No. 25-cv-06868-NW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 34

Before the Court is Defendants' motion for summary judgment. ECF No. 34.[1] The Court heard oral argument on August 21, 2026. Having considered the parties' submissions and arguments and the relevant law, for the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I. BACKGROUND

The factual background is drawn primarily from the parties' undisputed material facts ("UMF"), as contained in Plaintiff's responses and objections to Defendants' UMF submission. *See* ECF No. 35-2 at 3–10[2]. Undisputed facts are also drawn from Defendant Officer Kozisek's mobile video-audio recording system footage (the "MVARS"), the authenticity and admission of which is undisputed by the parties as both parties contend the footage supports their arguments. ECF No. 35-3 at 10–11 (lodging of MVARS); *see also* Ex. 36 at 2 ( "[T]he MVARS footage [] actually supports the request for Summary Judgment."). Finally, where relevant, the Court

[1] Except where otherwise noted, record citations are to material in the Electronic Case File ("ECF") and pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Citations to the UMFs are to the numbered facts, *i.e.*, UMFs 1–18.

United States District Court
Northern District of California

references some of Plaintiff's facts separately submitted in opposition to summary judgment, based on other evidence including the report of his police-practices expert, Ernest Burwell. ECF No. 35-1; ECF No. 35-3, Ex. 3 ("Burwell Report").

On August 23, 2024, the California Highway Patrol ("CHP") received a report of a man allegedly brandishing a firearm at another driver. UMF 1. The reporting party described the car and driver, and "[a] little over an hour after the report, Officers Hernandez, Negrete, and Kozisek found the described vehicle and performed a traffic stop" that was classified as "high-risk" due to the report. UMFs 2–5. When Plaintiff was stopped, a CHP officer commanded him to "[g]et [his] hands out [of] the car," and Plaintiff exited his vehicle. MVARS at 0:06–20. An officer then commanded Plaintiff to put his hands up. In response Plaintiff raised his hands, then lowered them and began speaking to the officers while gesturing. *Id.* at 0:22–34.[3] An officer then commanded Plaintiff to put his hands up several more times. *Id.* at 0:34–40. Plaintiff did not comply and instead reached into his driver-side seat and pulled out a small dog. *Id.* at 0:34–41.

About a second or two after Plaintiff emerged holding his dog, and after he had turned his body fully toward the police cruiser, Officer Hernandez discharged his firearm at Plaintiff. *Id.* at 0:37–41; *see also* UMF 9. As noted by Plaintiff's expert, the bullet missed Plaintiff and entered a nearby residence. Burwell Report, ECF No. 35-3 at 18–22.

The officers then issued various, sometimes conflicting commands to Plaintiff. They repeated the command for him to put his hands up and told him to: "walk over here;" stop walking away; put his dog down; put his dog back in his car; and stop reaching into his car. MVARS at 0:42–4:34. The parties' characterizations of the encounter differ. Plaintiff states that he was "attempting to deal with the dog and comply with commands while frightened and confused." UMF 12. Defendant states that Plaintiff "disobey[ed] commands." *Id.* What is undisputable on the face of the video, however, is that Plaintiff complied with some commands. He walked toward the officers, put his dog back in his car, closed his car doors, and did at various times put his hands up (including by placing them on his head, although he also lowered them often). MVARS at

[3] As Defendants explained at the hearing, Officer Kozisek's MVARS recording, for the most part, recorded the words of other officers only sporadically and did not pick up Plaintiff's statements.

0:30–4:34. Throughout the encounter, Plaintiff moved around his car, sometimes toward and sometimes away from the officers. *Id.* About 4 minutes after the stop began, Plaintiff stood with his arms stretched wide away from his body, put his arms down, turned around, moved four steps away from the officers and stopped. MVARS at 4:30–39. At the same time, Officer Kozisek deployed his K-9 unit on Plaintiff. *Id.* The police dog bit Plaintiff's leg and continued to bite for about 20 seconds, while officers surrounded and subdued Plaintiff. MVARS at 4:38–5:05 (appears to be about 27 seconds); *see also* Burwell Report, ECF No. 35-3 at 52 (opining that the bite lasted 28 seconds). Plaintiff asserts the police dog bit him for about six seconds before he was on the ground or in officers' hands; for the remainder of the time that the dog bit him, Plaintiff's expert opines that Plaintiff was subdued and the dog should have been called off Plaintiff's leg. MVARS at 4:38–44; Burwell Report, ECF No. 35-3 at 51.

It is undisputed that Officer Negrete took no part in discharging the firearm or in deploying the K-9. *See, generally*, UMFs 1–18.

## II. LEGAL STANDARD

A court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine issue of material fact exists if there is sufficient evidence such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. In assessing summary judgment, the Court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id.* at 249.

## III. DISCUSSION

"The doctrine of qualified immunity protects police officers from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *D'Braunstein v. California Highway Patrol*, 131 F.4th 764, 768 (9th Cir. 2025) (internal quotation marks and citations omitted). Although both the

underlying Fourth Amendment claims and the qualified immunity inquiry turn on the "reasonableness" of police officers' conduct, the Ninth Circuit has "held that the standard of reasonableness for purposes of qualified immunity is distinct from the standard of reasonableness embodied in the Fourth Amendment." *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1012 (9th Cir. 2002). Defendants' arguments here are directed to qualified immunity only and specifically to the latter prong and the inquiry of whether the acts of Officers Negrete, Hernandez and Kozisek "could be supported by another reasonable officer." ECF No. 34-1 at 5; *see also id.* at 4, 6. The Court addresses the parties' arguments as to each officer in turn.

**A. Summary Judgment is Granted as to Officer Negrete**

Defendants argue that Officer's Negrete's actions were limited to issuing commands, subduing Plaintiff and rendering aid. *See* ECF No. 34-1 at 4. Plaintiff does not dispute these characterizations. *See, generally*, ECF No. 35. Indeed, Plaintiff represented at the hearing that he does not oppose dismissal of the claims against Officer Negrete on qualified immunity grounds. Accordingly, the Court **GRANTS** the Defendants' motion as to Officer Negrete and enters judgment in her favor.

**B. Summary Judgment is Denied as to Officer Hernandez**

It is undisputed that Officer Hernandez discharged his firearm at Plaintiff. UMF 9; *see also* MVARS at 0:37–41. The decision to use deadly force is a serious one. Indeed, as photographs from the Burwell Report show, the round fired by Officer Hernandez entered a nearby residence and could have seriously injured an occupant. *See* Burwell Report, ECF 35-3 at 18–22. Accordingly, courts in this District have found that the law is clearly established that officers "should not use deadly force unless [Plaintiff] posed a significant risk of death or serious physical injury to the officers or others, and that they should warn before using deadly force if feasible." *E.g.*, *Bowles v. City of San Jose*, No. 19-cv-01027-NC, 2020 WL 3251156, at *1 (N.D. Cal. June 16, 2020).

The question here is a close one. To be sure, Plaintiff was stopped after a report of a man with a firearm matching his description and driving a similar car. UMFs 2–5. But before Officer Hernandez discharged his weapon, Plaintiff had exited his car and raised his hands to show that he

was unarmed. MVARS at 0:24–38. Then, Plaintiff reached into his car, which the officers had not yet searched and which, according to the report, may have contained a firearm. *See* MVARS at 0:36–0:39. It is possible that, given the prior report, a reasonable officer could have feared that Plaintiff was going to get a gun out of the car. But Officer Hernandez did not discharge his gun at that time; he waited for Plaintiff to emerge and fired his gun only after Plaintiff had turned his body toward the police cruiser, holding a small dog and not a firearm. MVARS at 0:38–0:41. "It is well-established in the case law that an officer may not use deadly force against an unarmed and non-dangerous individual." *E.g.*, *Kiles v. City of N. Las Vegas*, 276 F. App'x 620, 622 (9th Cir. 2008) (citing *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). The question then turns on what Officer Hernandez could see at the time he discharged his weapon: Was Officer Hernandez already aware that Plaintiff had emerged with a small dog rather than a gun, or could he reasonably still believe that Plaintiff might have grabbed a gun?

The Court explored this issue with the parties at the hearing, and it appeared to come down to Officer Hernandez's vantage point. He is somewhere to the left of the police cruiser and might have been able to see Plaintiff clearly; but it is not clear in the record, for example, whether he was kneeling or standing or whether he had a clear and unobstructed view versus being behind other officers or vehicles. All of these are unresolved facts and, depending on their resolution, Officer Hernandez may or may not be entitled to qualified immunity. Accordingly, Defendants have failed to carry their burden as to Officer Hernandez and summary judgment is **DENIED**.

**C. Summary Judgment is Denied as to Officer Kozisek**

Plaintiff's excessive-force claims against Officer Kozisek are two-fold. First, Plaintiff argues that Officer Kozisek unreasonably deployed his K-9 unit. *See* ECF No. 35 at 8–9. Second, even if reasonably deployed, Plaintiff argues that Officer Kozisek used excessive force by allowing the K-9 to remain attached to and bite Plaintiff for an unreasonably long time, after the officers were physically engaged with him and he was subdued. *Id.* at 9.

The use of a "bite-and-hold" canine by police, "though not deadly," is "severe." *See Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003). The deployment of such a canine may be justified where a suspect is fleeing, for example "against a felony suspect who was fleeing a traffic

infraction, who had possessed a large knife only moments earlier and might have had mental health problems." *See Hartsell v. Cnty. of San Diego*, No. 16-cv-01094-LAB (LL), 2019 WL 291965, at *9 (S.D. Cal. Jan. 23, 2019), *report and recommendation adopted,* 2019 WL 1035932 (S.D. Cal. Mar. 5, 2019), *aff'd,* 802 F. App'x 295 (9th Cir. 2020) (citing *id.*).[4] Defendants' sole argument for justifying Officer Kozisek's deployment of the K-9 is that Plaintiff "turn[ed] from the officers and beg[a]n[] leaving the scene." ECF No. 36 at 4; *see also* ECF No. 34 at 6.

But that fact is disputed. *See* UMF 15. As Plaintiff argues, given his "indicators of surrender," such as placing his hands on his head and attempts to show he was unarmed, it would be unreasonable to think he was fleeing the scene or a threat. *See* ECF No. 35 at 8–9. Moreover, the MVARS footage shows that Plaintiff did not turn and run, but walked slowly just a few steps backward; in light of Plaintiff's similar movements around the scene generally, it is unclear whether a reasonable officer could have thought Plaintiff was now fleeing the scene. *See* MVARS 4:38–44; *compare id. with* MVARS at 0:18–4:38 (Plaintiff's generally disorganized movements); *contra* ECF No. 36 at 2–3. At a minimum, there is a factual dispute as to whether a reasonable officer could believe, as Defendants claim, that Plaintiff was fleeing the scene such that deployment of a police canine was permitted.

Moreover, at no point in Defendants' motion or reply do they address Plaintiff's additional claim that, even if initial deployment of the K-9 unit was justified, the length of time of that deployment was not. *See* ECF No. 34 at 6; ECF No. 36 at 2–3. "[I]t is clearly established that excessive duration of the dog bite . . . could constitute excessive force in violation of the Fourth Amendment." *Koistra v. Cnty. of San Diego*, 310 F. Supp. 3d 1066, 1083 (S.D. Cal. 2018) (citing *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)) (holding that a police officer was "not entitled to a qualified immunity defense on the continued and prolonged use of the 'bite and hold' by the canine after Koistra surrendered," *i.e.*, for 30 seconds after surrender).

Accordingly, Officer Kozisek is not entitled to qualified immunity and summary judgment

[4] The Court does not suggest that deploying a bite-and-hold canine is reasonable against a fleeing suspect in all circumstances. It is sufficient to assume, for the purpose of resolving this motion, that it would have been reasonable for Officer Kozisek to deploy his K-9 in this case if a reasonable officer could believe Plaintiff was fleeing.

as to his deployment of the K-9 unit or the duration thereof.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

Judgment is entered in favor of Officer Negrete on Plaintiff's claims against her.

Summary judgment is denied as to Officers Hernandez and Kozisek on Plaintiff's claims against them.

**IT IS SO ORDERED.**

Dated: September 1, 2026

Noël Wise
United States District Judge

United States District Court
Northern District of California